**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **CHERYL A. SEXSTELLA-WRIGHT,** | ) | **CASE NO.1:05CV1136** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **SANDUSKY CITY SCHOOL DISTRICT** | ) | **OPINION AND ORDER** |
| **ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

　　　This matter is before the Court on Defendants' Sandusky City School District, William Pahl and John Kaszonyi Motion for Summary Judgment.  For the following reasons, the Court grants Defendants' Motion.

　　　Plaintiff is a white female married to an African-American male.  Plaintiff alleges she was discriminated against based on her sex and/or relationship with a member of a protected class in violation of Title VII of the Civil Rights Act and Ohio Revised Code §4112.02.  Plaintiff contends she was unlawfully retaliated against in violation of federal and Ohio law.  Plaintiff further alleges she was denied her right to Equal Protection and Substantive Due Process

1

guaranteed by the Fourteenth Amendment to the U.S. Constitution.  Finally, Plaintiff contends Defendants' intentional acts were in contravention of Ohio public policy and caused Plaintiff to suffer  emotional distress.

## **FACTS**

In July/August of 2002, Plaintiff was hired by the Board of Education Sandusky City School District as principal of Mills Elementary School. Her employment contract was for a term of two years and ended July 31, 2004.  William Pahl was Superintendent of the Sandusky School District from June 2002 to the present.  John Kaszonyi was the Assistant Superintendent of the Sandusky School District.  Both Pahl and Kaszonyi were Plaintiff's supervisors.  Plaintiff alleges shortly after her hiring, Defendant Pahl commented to the Board of Education's Human Resource Director Craig Bickley, about the fact that Plaintiff was married to an African-American.  Shortly thereafter, Plaintiff alleges she was treated "less favorably than her male colleagues" as well as colleagues not married to African-Americans.  She also alleges she was given tasks not required of similarly situated employees and her reviews were not conducted in accordance with Defendants' policies and procedures.  Overall, she was given tasks "more onerous" than those given similarly situated male colleagues and colleagues not married to African-Americans.

Plaintiff contends her complaints went ignored and her concerns that minority students were treated less favorably than non-minority students were also ignored.

On February 14, 2004, Plaintiff filed a complaint with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission alleging she was discriminated against based on her sex and race.  The Board of Education was informed by letter of these charges on March

2

3, 2004.  Shortly thereafter, Defendant Kaszonyi conducted an evaluation of Plaintiff's performance and gave her an "unreasonably poor evaluation." On March 8, 2004, Defendant Pahl told Plaintiff he intended to recommend against renewal of Plaintiff's employment contract.  On March 22, 2004, the Board voted against renewal of Plaintiff's employment contract. On March 23, 2004, Plaintiff filed with the OCRC and EEOC a complaint alleging unlawful retaliation.  She received a right to sue letter on February 10, 2005 on her discrimination claims.

Defendants contend the non-renewal of Plaintiff's employment contract was due to her poor performance as principal and not because of her relationship with an African-American, her sex, or in retaliation for filing an EEOC/OCRC complaint.

## STANDARD OF REVIEW

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

3

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleadings, but the
> adverse party's response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a
> genuine issue for trial.  If the adverse party does not so respond,
> summary judgment, if appropriate, shall be entered against the
> adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, this Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hospital Ass'n.,* 78 F.3d 1079, 1087 (6th Circ. 1996). "Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-250 (1986).

## Discrimination based on Race and Sex

Title VII of the United State Code makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color religion, sex, or national origin."  42 U.S.C. 2000e-2(a)(1)(1994).  A plaintiff may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, or by providing circumstantial evidence which creates an inference of discrimination."  *DiCarlo v. Potter,* 358 F.3d 408, 414 (6th Cir. 2004).  "Mere personal belief, conjecture and speculation are insufficient

4

to support an inference of...discrimination."  *Woythal v. Tex-Tenn Corp.,* 112 F.3d 243, 247 (6th Cir. 1997).

In *Talley v. Bravo Pitino Rest.,* 61 F.3d 1241, 1248-49, (6th Cir. 1995), the Sixth Circuit provided examples of direct evidence of racial animus.  These included racial slurs by a manager, a principal stating a "white presence" needed to be maintained, and employee testimony that managers made derogatory racial remarks about blacks.  Discriminatory remarks by a manager may be evidence of discrimination even if the manager was not the ultimate decision maker.  *Ercegovich v. Goodyear Tire and Rubber Co.,* 154 F.3d 344, 354-55 (6th Cir. 1998).  However, in *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 380 (6th Cir. 1993), the Sixth Circuit stated "[c]ase precedent clearly reflects that isolated and ambiguous statements ⋯ are too abstract, in addition to being irrelevant and prejudicial" to support a discrimination claim.

In the absence of direct evidence of discrimination, the Court will apply the *McDonnell Douglas/Burdine* burden shifting analysis. It is plaintiff's burden to prove a prima facie case of discrimination by his or her employer. *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, (1973). *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53, (1981). Upon plaintiff making a prima facie showing of discrimination, the burden "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' " *Id.* at 253, (quoting *McDonnell,* 411 U.S. at 802). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* "The ultimate burden of persuading the trier of fact that the defendant intentionally

5

discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

## Direct Evidence of Discrimination

The Court finds Plaintiff has failed to produce direct evidence of discrimination either on the basis of her sex or association with a member of a protected class. Plaintiff's sole direct evidence of racial animus is a comment allegedly made by William Pahl to then Human Resources Director Craig Bickley. During their review of Plaintiff's application, William Pahl allegedly said to Mr. Bickley, "are you aware her husband's black?" Mr. Bickley's impression was Mr. Pahl was bothered by the fact. Not only is this statement ambiguous and apparently isolated but is expressly disavowed by Mr. Pahl. Furthermore, the evidence provided by both Plaintiff and Defendants supports the finding that Mr. Pahl learned of Plaintiff's marriage to an African-American prior to his decision to support Plaintiff's hire. Mr. Bickley's affidavit demonstrates Mr. Pahl played more than an insignificant role in reviewing Plaintiff's application. In fact, Mr. Bickley's affidavit, submitted by Plaintiff, states Mr. Pahl made the alleged observation that Plaintiff was married to an African-American during the course of checking Plaintiff's references and speaking to the superintendent of Plaintiff's prior place of employment, Bellevue Schools. Bickley's affidavit contradicts Plaintiff's allegations in her Complaint that the alleged discriminatory statement was made after her hire. Pahl's uncontroverted testimony contends he had a say in the decision to hire Plaintiff and supported her hiring. Therefore, the evidence provided by both Plaintiff and Defendants best supports a positive, rather than negative connotation, to the alleged comment made by Pahl, as evidenced by the fact he recommended Plaintiff be hired.

There is no direct evidence of any gender based discriminatory animus rather, Plaintiff's

evidence is almost entirely based on disparate treatment.  Therefore, Plaintiff has failed to meet

her burden of demonstrating discrimination by direct evidence.

### McDonnell Douglas/Burdine Analysis

"To establish a prima facie case of discrimination based upon circumstantial evidence,

Plaintiff must show that he (1) "is a member of a protected group," (2) "was subject to an

adverse employment decision," (3) "was qualified for the position, and (4) "was replaced by a

person outside of the protected class." *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 349 (6th

Cir.1997).  In addition, under section (4) Plaintiff may meet her burden by showing she was

treated differently than similarly situated non-protected employees.  See *Wade v. Knoxville Utils.*

*Bd.,* 259 F.3d 452, 461 (6th Cir. 2001).  In disparate treatment claims Plaintiff must "produce

evidence which at a minimum establishes (1) that he was a member of a protected class and (2)

that for the same or similar conduct he was treated differently than similarly-situated non-

minority employees." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992).  It is

Plaintiff's burden to "prove that all of the relevant aspects of his employment situation were

'nearly identical' to those of [the non-minority's] employment situation." *Pierce v.*

*Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994). The analysis is identical in claims

of sex discrimination.  See *Peltier v. United States,* 388 F.3d 984, 987 (6th Cir. 2004). The burden

of establishing a prima facie case under *McDonnell Douglas* is not onerous.  *Burdine,* at 251.

### Member of a Protected Class

Plaintiff has established she is a member of a protected class to maintain a cause of action

for discrimination based on race.  In *Tetro v. Elliott Popham Pontiac,* 173 F.3d 988 (6th Cir.

1999), the Sixth Circuit held a party may bring a discrimination claim under Title VII if they are

7

the subject of a discriminatory animus towards third persons with whom the individuals associate.  Here, Plaintiff has alleged and attested she is married to an African-American, a member of a protected class.  Pursuant to *Tetro,* her association by way of marriage to an African-American satisfies the first prong in a Title VII action for race discrimination.

That Plaintiff is a member of a protected class based on her sex is undisputed.

## Qualifications for the Position

Plaintiff has met her burden of demonstrating she was qualified for the position as her prior work experience and her hiring by Defendants after careful consideration of her background demonstrates. The Court finds Plaintiff has met her prima facie burden of showing she was qualified for the position.

## Adverse Employment Action

In *Jones v. City of Allen Park,* 167 Fed.Appx. 398, 407 (6th Cir. 2006), the Sixth Circuit held non-renewal of an employment contract qualifies as an adverse employment action. Therefore, Plaintiff has met her prima facie burden of demonstrating the third prong in a Title VII discrimination action.

## Replaced by Non-Protected Employee

Plaintiff contends she was replaced by Ray Young, a white male.  Defendants contend there was no replacement as an elementary school closed due to lack of enrollment.  As a result, Mr. Young was transferred to Mills Elementary and the principal of the closed school took over Mr. Young's duties at Ontario Elementary.  However, Defendants have not provided any case law to support their position that a transferred employee does not constitute a replacement for purposes of establishing a prima facie case of discrimination.  Because Mr. Young, a white male,

took over Plaintiff's position, and there is no evidence Mr. Young was associated with a member of a protected class under *Tetro,* the Court finds Plaintiff has met her prima facie burden.

**Disparate Treatment of Plaintiff**

In the alternative, Plaintiff attests she was treated differently than her male counterparts who were not married to members of a protected class.  She attests that she and a female African-American principal were the only two principals required to prepare their own substitute reports.  All other principals had their secretaries prepare or participate in preparing their substitute reports.  Plaintiff further attests she was required to prepare her own corrective action plan to address her alleged deficiencies while a white male principal with allegedly more problems was not required to prepare a corrective action plan. Plaintiff contends Mr. Young told Plaintiff the administration supported him and not her, "because I could be a good old boy" and "I'm a boy."  Plaintiff further alleges she was denied leave near the end of the school year while another male principal was granted leave.  Finally, she attests that, after her contract was not renewed, her desk was searched, while a male administrator, whose contract was also not renewed, was not searched until Plaintiff complained.

Plaintiff has, therefore, submitted sufficient evidence to support a prima facie case of race and gender discrimination.

**Defendant's Non-Discriminatory Reason for Non-renewal**

As Plaintiff has satisfied her burden of demonstrating a prima facie case of race and gender discrimination, the burden now shifts to Defendants "to articulate a legitimate, non-discriminatory reason for the employee's rejection."  *Burdine*, at 253.  To meet their burden, Defendants, " need only produce admissible evidence which would allow the trier of fact

9

rationally to conclude that the employment decision has not been motivated by discriminatory animus." *Id.* at 257. As the Supreme Court went on to say in *Burdine*:

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reason.(citation omitted) It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.

Id at 254.

Defendants offer the affidavits of William Pahl and John Kaszonyi in which they testify Plaintiff's contract was not renewed due to poor performance, lack of leadership and low morale. As further evidence, they submit performance reviews of Plaintiff given, not only by themselves, but also teachers working for Plaintiff. Finally, they offer affidavits of teachers, former teachers and a Board member attesting to the problems they had or observed with Plaintiff's job performance.

Defendants further argue Plaintiff was not similarly situated to Ray Young, nor were Mr. Young's problems similar to Plaintiffs. Defendants attest that several African-American and female administrators' contracts were renewed at the same time Plaintiff's was not renewed. Plaintiff's negative reviews first appear in June of 2003 and continued through March of 2004. Defendants evidence of negative reviews is supported by Plaintiff's own testimony and evidence acknowledging, though disputing, the basis for the negative performance reviews.

10

Therefore, the Court finds Defendant has met its burden of articulating a non-discriminatory reason for Plaintiff's non-renewal.

### Pretext

The burden now shifts back to Plaintiff to demonstrate, by a preponderance of the evidence, that Defendants' proffered reasons for the adverse employment action were pretextual. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000). "Under the first and third methods of showing pretext, the fact finder may infer discrimination from the circumstances." *Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579, 589 (6th Cir. 2002. "Under the second method, [the plaintiff] may not rely exclusively on his prima facie evidence, but must introduce some further evidence of discrimination." *Id.*

When a Court considers whether a defendants non-discriminatory reason for the adverse employment action is mere pretext, "it is important to note that an employer may make employment decisions for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all as long as its action is not for a discriminatory reason." *Mischer v. Erie Metropolitan Housing Authority,* 345 F.Supp.2d 827, 830 (N.D. Ohio 2004), citing *Beaty v. A & P,* No. 02-73045, 2003 U.S. Dist. LEXIS 15076, *11 (E.D. Mich. June 23, 2003) (quoting *Nix. v. WLCY Radio,* 738 F.2d 1181, 1187 (11th Cir.1984)).

The Court finds little inferential evidence of race or gender discrimination.  There is no allegation of racial or gender related statements made by any Board member or John Kaszonyi. Nor is there evidence of any racial or gender based animus by William Pahl.  The Court finds the

11

ambiguous statement attributed to Pahl by Bickley too abstract and isolated to support a finding of racial animus.

Plaintiff alleges Pahl wanted to have the NAACP educational liaison, Dan Levell, removed.  Plaintiff alleges "Mr. Levell and I had a very good working relationship and I not only advised Mr. Pahl of this, but also informed him that I was also a member of the NAACP.  Mr. Pahl did not appear pleased with this information."  No explanation is given on why Pahl wanted Levell removed.  There is no information provided as to Levell's ethnicity to allow an inference of racial animus on the part of Pahl.  Pahl's wanting a particular liaison removed does not permit an inference that he somehow harbored a bias against the ideals represented by the NAACP.  Plaintiff does not attest that Pahl expressed any animosity towards the NAACP in general.

Therefore, the Court finds Plaintiff has not met her burden of stating with specific facts a direct or indirect claim of racial animus or gender animus to support her claims outside of her evidence of disparate treatment.

### Disparate Treatment and Pretext

Plaintiff offers the following as evidence of disparate treatment:

1) Her evaluation in her first year (2002-2003) was performed by John Kaszonyi, who spent little time at her school and did not otherwise observe her.

2) Her review was not indicative of her skills and abilities, as shortly after the review she was asked to be the summer school administrator.

3) Individuals she interviewed and were hired were assigned to schools with male principals.

4) She performed an analysis of discipline meted out to students and found disparate

12

treatment patterns evidenced by greater discipline dispensed to minority students.  She

passed her results on to her supervisors and discussed her findings with individual

teachers.  This "set the tone for the following school year, 2003-2004."

5)    Plaintiff e-mailed Pahl in November of 2003 outlining her complaints of unfair treatment

and harassment by John Kaszonyi.  Nothing was done.

6)    The duty schedules created by Plaintiff and a committee for the Mills School staff was a

source of contention for several of the teachers under Plaintiff who complained to

Kaszonyi.  She was forced to implement a new duty schedule even though her original

was much more fair to all her employees than ones prepared by male colleagues.

7)    Joyce Jackson, a female African-American, and Plaintiff were the only principals

required by Kaszonyi to prepare their substitute reports without the aid of their

secretaries.

8)    Plaintiff was requested by Kaszonyi to prepare a corrective action plan to address her

alleged deficiencies.  Mr Young, a fellow principal of an elementary school, who had

more problems than Plaintiff, was not required to do so.  Plaintiff alleges Mr. Young told

her it was because he was a boy.

9)    Plaintiff requested leave and was denied while a fellow male administrator was permitted

leave during the same period of time.

10)   After non-renewal, Plaintiff's desk and computer were searched, while a white male

administrator who was also not renewed did not have his desk and computer searched.

His computer was searched only after Plaintiff complained.

Plaintiff has not met her burden to show Defendant's decision not to renew her contract

13

had no basis in fact.  Defendants have produced the two admittedly poor evaluations given

Plaintiff; the eyewitness account of a Board Member recommending non-renewal based on her

personal observations while volunteering at Plaintiff's school; and, teacher complaints and

testimony that morale was low at the school. In addition, the uncontroverted evidence shows

while  Plaintiff's contract was not renewed, several elementary school principals contracts were

renewed, including an African-American female and African-American male administrator.

Along with Plaintiff, a white male administrator's contract was not renewed.

In disparate treatment claims, "Plaintiff must demonstrate that he or she is similarly

situated to the claimed comparator in all relevant respects." *Ercegovich,* 154 F.3d at 353.  Here,

the Court finds that both Plaintiff and Young were elementary school principals and both

reported to John Kaszonyi and William Pahl.  However, Plaintiff has not demonstrated the

alleged complaints and grievances filed against Young were similar to those filed against her.

Nor has she produced evidence of Young's reviews that would permit a jury to infer Plaintiff's

non-renewal was based on discriminatory animus when Young experienced the same

performance problems.

Though Plaintiff has produced evidence there were teacher complaints lodged against

Mr. Young, Plaintiff has produced no evidence these complaints were similar to the complaints

lodged by staff against Plaintiff.  Plaintiff again cites to the Bickley affidavit that Young had

several grievances filed against him, yet he was not disciplined.  However, it says nothing about

the nature of the grievances and complaints filed.  In fact, the Bickley affidavit doesn't even

specify the grievances and complaints filed at Ontario School were filed against Young.

That Plaintiff's evaluations were performed by Mr. Kaszonyi, at least with respect to the

14

first review, without his having been present to observe Plaintiff, does not create an inference, as Plaintiff does not allege Mr. Kaszonyi conducted other similarly situated employee reviews in the same manner.

Her appointment to summer school administrator after her first poor review does not rebut her poor performance evaluation, as there is no evidence for the reason why Plaintiff was appointed summer school administrator. This evidence is not instructive on the issue of pretext.

Nor do her challenges to the legitimacy of teacher complaints help her cause.  Whether these complaints were motivated by personality clashes, dissatisfaction with Plaintiff's management style, or based on legitimate grievances, ultimately they demonstrate low morale and dissatisfaction of the employees working under Plaintiff, which this Court recognizes as a bases for non-renewal wholly apart from any discriminatory animus.

Plaintiff alleges she and another female administrator were required to prepare their own substitute reports while male administrators were allowed to have their secretaries prepare them. Defendants allege they required all administrators to prepare their own substitute reports and if they were aware of an administrator passing this duty off onto a secretary they would have been told to prepare the reports themselves.

Plaintiff also attests she was required to prepare her own corrective action report while Young, who had as many, if not more grievances than Plaintiff, was not required to prepare one. Again, the Court does not know the complaints and grievances filed against Young were similar to those alleged against Plaintiff.  The Court may not speculate to bolster Plaintiff's case.

Plaintiff contends her desk and computer were searched while the white male whose contract was also not renewed did not have his desk or computer searched until after Plaintiff

15

complained.  Defendants state a substitute sitting at Plaintiff's desk found a bag of marijuana in Plaintiff's desk and reported it.  Furthermore, Defendants contend all computers are reviewed after an employee leaves.  The former Human Resource (HR) director attests he was unaware of this policy.  Though there appears to be a genuine dispute over this issue, it occurred ***after*** Plaintiff's contract was not renewed and the HR director's affidavit attests he was no longer the HR director almost nine months prior to Plaintiff's nonrenewal.

Plaintiff contends the duty schedule she prepared was much more fair to her employees than the ones prepared by male counterparts.  This is supported by the affidavit of the school librarian.  However, it is undisputed teachers complained to Defendant Kaszonyi and that is why he required Plaintiff to prepare a new one.  Further, of what relevance is the opinion of the school librarian on fairness of schedules?

Finally, Plaintiff contends she was denied leave at a critical time of year while a male administrator was permitted leave.  The Court is unclear why his leave request was granted and whether there was a comparable situation in their respective schools.  Again, the Court may not speculate- Plaintiff bears the evidentiary burden.

### The Ultimate Decision Maker

One issue neither side has satisfactorily addressed is the information provided the Board of Education in making the decision to non-renew Plaintiff's contract.  The Court may not speculate as to what  information was presented to the Board, which had the authority, to renew or not renew Plaintiff's claims.  The only evidence of the Board's intent was the affidavit and letter of Board President Faith Denslow whose observations of Plaintiff showed: unprofessionalism, creating a divisive atmosphere along ethnic lines, and a failure to embrace

16

diversity, among other observations.  Therefore, wholly apart from either Kaszonyi's or Pahl's recommendations, Denslow's decision not to renew Plaintiff's contract was based, at least in part, on her own observations. To impute a supervisors discriminatory animus to the ultimate decisionmaker  "the plaintiff must offer evidence that the supervisor's racial animus was the cause of the termination or somehow influenced the ultimate decisionmaker." *Christian v. Wal-mart Stores, Inc.,* 252 F.3d 862, 877 (6th Cir. 2001).  Plaintiff has offered no evidence of any discriminatory animus by any Board member.  Therefore, she necessarily seeks to impute the alleged animus of supervisors Kaszonyi and Pahl in influencing the Board's decision.

The Sixth Circuit has found persuasive, (see *Christian,* at 877) the Seventh Circuit's analysis in *Shager v. Upjohn Co.,* 913 F.2d 398 (7th Cir.1990), wherein the Court looked to the influence the supervisor had on the decision to fire an employee by a neutral board.  The Seventh Circuit reasoned if the neutral hiring authority "acted as the conduit of [the manager's] prejudice--his cat's paw--the innocence of its members would not spare the company from liability."  If, however, the hiring authority "was not a mere rubber stamp, but made an independent decision to fire Shager," there would be no violation of federal anti-discrimination statutes *Id.* at 406. In citing to *Shager*, the Sixth Circuit, in *Christian,* went on to say, "[f]inding that the supervisor 'set up Shager to fail' in his job duties and then portrayed Shager's performance 'in the worst possible light' to the committee, the court concluded that the committee's decision to fire Shager 'was tainted by [the supervisor's] prejudice' and that the supervisor's 'influence may well have been decisive.' *Id.* at 405. Based on this determination, the Seventh Circuit concluded the fact that the committee was ignorant of Shager's age did not insulate the employer from liability for the supervisor's discrimination at the summary judgment stage, and the question of the causal

17

link between Shager and the committee's termination decision must be submitted to a jury."
*Christian,* at 877.

The Court has William Pahl's letter of March 8, 2004 to Plaintiff stating he will recommend non-renewal.  However, the Court also has the affidavit and letter of Board member Faith Denslow to John Kaszonyi dated Feburary 20, 2004, wherein she lists her personal observations of Plaintiff's performance including: horrendous morale, divisiveness of the staff caused by Plaintiff, Plaintiff's embarrassing employees in front of others, dividing employees along ethnic lines, pressuring employees to write supportive letters on Plaintiff's behalf, and bias in her evaluations of employees based on those she trusts versus those she does not.  Based on these observations alone she states, "John [Kaszonyi] I am aware her contract is up at the end of this school year and I truly believe for the good of Sandusky's children, Cheryl Sexstella-Wright's contract should not be renewed."  Again, this is a Board member (in fact, Ms. Denslow was the Board President for the school year 2002-2003), making this determination without reference to any performance evaluations by either Kaszonyi or Pahl.

This Court does have the affidavit of Kaszonyi, which states the Board made its decisions to renew or not renew administrators based on the recommendations of Pahl.  Therefore, this evidence raises a factual issue whether the Board merely rubber stamped the recommendations of Plaintiffs supervisor.  However, if Plaintiff is unable to show discriminatory animus by her supervisors, the inquiry ends there.

Having reviewed the evidence presented, the Court finds Plaintiff has failed to meet her burden to show Defendants proffered reasons for non-renewal were pretextual.  Therefore, the Court finds Defendants are entitled to summary judgment on Plaintiffs claims of discrimination.

18

**Retaliation**

"To establish a prima facie case of Title VII retaliation, a plaintiff must show that (1) plaintiff engaged in activity protected by Title VII; (2) plaintiff's exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir. 1997).

Plaintiff's retaliation claim is based on the fact that she filed her initial complaint with the EEOC in February of 2004 and she was non-renewed in March of 2004.  Temporal proximity alone, however, is insufficient to support an inference of retaliation.  See *Nguyen v. City of Cleveland,* 229 F.3d 559, 565-567 (6th Cir. 2000).  The Court has as evidence for non-renewal Plaintiff's poor performance reviews that predate her filing with the EEOC. The Court does note there is a genuine issue of fact whether Defendants knew Plaintiff had filed with the EEOC before they recommended her nonrenewal.  However, the Court does have evidence Plaintiff was informed her contract may not be renewed in December of 2003, two months before she filed with the EEOC.

The Court finds Plaintiff's poor reviews from the outset of her term of employment, and the testimony of Faith Denslow, recommending Plaintiff's non-renewal based on her own observations that preceded Plaintiff's EEOC filing, is enough to destroy any causal connection between the filing of her EEOC complaint and her subsequent non-renewal.  Also, she was on a two-year contract whose term was due to run approximately four months after she filed her complaint with the EEOC.  Unlike an at-will employee, she had a fixed employment term.  The decision to renew had to be made and Plaintiff, therefore, is responsible for demonstrating that,

19

but for the EEOC filing, it was more likely than not Plaintiff would be renewed. Plaintiff has not met her burden.

### Plaintiff's Ohio Claims for Discrimination and Retaliation

Because Plaintiff's claims for discrimination and retaliation under Ohio law are analyzed under the same standard as her federal claims, the Court finds Plaintiff has failed to meet her burden and grants summary judgment for Defendants accordingly. *Greene v. St.Elizabeth Hospital Medical Center,* No. 96-4308, 1998 WL 13410 at *5 (6th Cir. Jan. 7, 1998) quoting *Neely v. Franklin Cty. Aud.* (1994) 97 Ohio App.3d 771; *Laderach v. U-Haul of N.W. Ohio,* 207 F.3d 825, 828 (6th Cir. 2000).

### Substantive Due Process

Plaintiff's complaint alleges violation of her substantive due process rights under the 14th Amendment. However, it does not specify what rights were violated. Rather, the Complaint merely reavers the allegations made under her Title VII claims. "Where a particular Constitutional Amendment 'provides an explicit textual source of Constitutional protection' against a particular sort of government behavior, that amendment and not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994), citing *Graham v. Connor,* 490 U.S. 395).   Also, "public employees, however, do not enjoy a substantive due process right in public employment." *DeMarco v. Cuyahoga County Department of Human Services, et al.,* 12 F. Supp.2d 715, 721 (N.D. Ohio 1998).  Nor has Plaintiff alleged Defendants' actions "shock the conscience" so as to warrant a finding of violation of Plaintiffs substantive due process rights.   Finally, "procedural due process and not substantive due process protects most state-created contract rights." *Id.*

Therefore, this Court grants summary judgment on Plaintiff's substantive due process claim.

## Equal Protection

"The showing that a plaintiff must make in order to recover on an employment discrimination claim under Title VII mirrors that which must be made in order to recover on an equal protection claim under section 1983." *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 794 (6th Cir.2000), citing *Risinger v. Ohio Bureau of Workers' Compensation,* 883 F.2d 475, 483- 84 (6th Cir.1989); *Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir.1988).  Because Plaintiff's Title VII claims have failed to survive summary judgment, Plaintiff's equal protection claim likewise must fail.

## Ohio Public Policy

Plaintiffs Complaint alleges violations of Ohio Public Policy.  When Plaintiff has reasonable alternative statutory remedies she may not maintain an action for violation of Ohio Public Policy.  See *Provens v. Stark County Bd.of Mental Retardation and Developmental Disabilities,* 64 Ohio St. 3d 252 (1992).  Nor can an employee whose terms and conditions of employment are governed by contract bring a public policy wrongful termination claim because non- renewal is not termination.  *Cameron v. Bd. of Education,* 795 F. Supp. 228 (S.D. Ohio 1991).

Plaintiff contends her violation of Ohio public policy claim stems from her allegations in the body of the Complaint, reaverred in her public policy claim, that Defendants' actions violated Ohio Revised Code Section §3319.02.  Therefore, as her Complaint alleges a statutory violation, she may not maintain an action for public policy violation and summary judgment is granted Defendant on this claim.

21

Plaintiff's allegations of violation of ORC 3319.02 is not found in Plaintiff's individual Counts and this Court is reluctant to address this as a properly plead claim.  However, this issue has already been determined in *State ex rel., Edward D. Jones v. Sandusky City Schools, et al.,* No E-05-041 2006 WL 146210 (Ohio App. 6 Dist. January 20, 2006).  Coincidently, Plaintiff in *Jones* is the white male whose contract was not renewed at the time Plaintiffs contract was non-renewed.

O.R.C. 3319.02 states in pertinent part:

D)(1) Each board shall adopt procedures for the evaluation of all assistant superintendents, principals, assistant principals, and other administrators and shall evaluate such employees in accordance with those procedures. The evaluation based upon such procedures shall be considered by the board in deciding whether to renew the contract of employment of an assistant superintendent, principal, assistant principal, or other administrator.

(2) The evaluation shall measure each assistant superintendent's, principal's, assistant principal's, and other administrator's effectiveness in performing the duties included in the job description and the evaluation procedures shall provide for, but not be limited to, the following:

(a) Each assistant superintendent, principal, assistant principal, and other administrator shall be evaluated annually through a written evaluation process.

(b) The evaluation shall be conducted by the superintendent or designee.

(c) In order to provide time to show progress in correcting the deficiencies identified in the evaluation process, the evaluation process shall be completed as follows:

(i) In any school year that the employee's contract of employment is not due to expire, at least one evaluation shall be completed in that year. A written copy of the evaluation shall be provided to the employee no later than the end of the employee's contract year as defined by the employee's annual salary notice.

(ii) In any school year that the employee's contract of employment is due to expire, at least a preliminary evaluation and at least a final evaluation shall be completed in that year. A written copy of the preliminary evaluation shall be provided to the employee at least sixty days prior to any action by the board on the employee's contract of employment. The final evaluation shall indicate the superintendent's intended recommendation to the board regarding a contract of employment for the employee. A written copy of the evaluation shall be provided to the employee at least five days prior to the board's acting to renew or not renew the contract.

22

(4) Before taking action to renew or nonrenew the contract of an assistant superintendent, principal, assistant principal, or other administrator under this section and prior to the last day of March of the year in which such employee's contract expires, the board shall notify each such employee of the date that the contract expires and that the employee may request a meeting with the board. Upon request by such an employee, the board shall grant the employee a meeting in executive session. In that meeting, the board shall discuss its reasons for considering renewal or nonrenewal of the contract. The employee shall be permitted to have a representative, chosen by the employee, present at the meeting.

(5) The establishment of an evaluation procedure shall not create an expectancy of continued employment. Nothing in division (D) of this section shall prevent a board from making the final determination regarding the renewal or nonrenewal of the contract of any assistant superintendent, principal, assistant principal, or other administrator. However, if a board fails to provide evaluations pursuant to division (D)(2)(c)(i) or (ii) of this section, or if the board fails to provide at the request of the employee a meeting as prescribed in division (D)(4) of this section, the employee automatically shall be reemployed at the same salary plus any increments that may be authorized by the board for a period of one year, except that if the employee has been employed by the district or service center as an assistant superintendent, principal, assistant principal, or other administrator for three years or more, the period of reemployment shall be for two years.

It is unclear from Plaintiff's Complaint what actions by the Sandusky Board of Education violated O.R.C. §3319.02.  In her Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiff alleges, "in the case at bar, Sandusky schools clearly had a policy related to evaluations for administrators such as Plaintiff.  Defendants admittedly did not follow this policy.  Lastly, Pahl made no recommendation one way or the other regarding the renewal of Sexstella-Wrights contract as part of her final evaluation in March of 2004.  By virtue of not complying with the madatory provisions of R.C. Section 3319.02(D) Plaintiff should have automatically been re-employed for one more year."

First, there is competing law on this type of claim.  In *State of Ohio ex rel. John A. Skaggs, v. Blanchester Local School District Board of Education,* No. CA 2004-04-011 (Ohio App. 3rd Dist. Sept. 1, 2004), the Court granted summary judgment and Petition for Writ of

Mandamus for Petitioner and awarded him his job for an additional two years as the Board failed to comply with the evaluation procedures by not providing him with two evaluations as required by §3319.02, failing to provide him a written copy of the preliminary evaluation sixty days prior to an action by the Board and a copy of the final evaluation five days prior to an action by the Board.

In the *Jones* case, the Court faced a similar situation wherein an administrator was given his evaluations timely but the final evaluation did not contain a statement as to what recommendation the Superintendent would make to the Board regarding renewal of Plaintiffs contract.  The Superintendent eventually recommended Plaintiff's contract be renewed but the Board voted against renewal.  Plaintiff brought suit alleging violation of O.R.C. §3319.  The Sixth District Court upheld the dismissal of Plaintiffs claims, stating O.R.C. §3319.02 only mandates renewal when a Board fails to give an administrator timely written notice of its intention not to renew his contract.

Here, it is undisputed Plaintiff has not requested a writ of mandamus.  *Jones* held, "the appropriate procedural vehicle for a school administrator to seek reemployment, damages and back pay for the nonrenewal of his or her employment contract is a petition for writ of mandamus.  *Jones,* at *7. (Note: *Skaggs* brought a petition for writ of mandamus).  Therefore, this Court holds Plaintiff's claim is improper as Plaintiff has not requested a mandamus action.  Furthermore, *Jones* held §3319.02 expressly states the establishment of an evaluation procedure did not create an expectancy of continued employment.  Finally, it is undisputed that, although Defendants evaluation did not contain a recommendation of renewal or non renewal, Defendant informed Plaintiff via letter three days later and two weeks before the Board vote he was

24

recommending her contract not be renewed.  Therefore, Plaintiffs claim fails pursuant to the holding in *Jones*.

### **Intentional Infliction of Emotional Distress**

Plaintiff points to no evidence of intentional infliction of emotional distress and does not contest Defendants are statutorily immune from intentional infliction of emotional distress claims.  Therefore, this Court grants Defendants Motion for Summary Judgment on this claim.

### **Conclusion**

Therefore, this Court grants Defendants' Motion for Summary Judgment on all Plaintiff's claims.

IT IS SO ORDERED.


December 6, 2006                          s/Christopher A. Boyko
Date                                             CHRISTOPHER A. BOYKO
                                                  United States District Judge

25